UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DOMINGA BALDERAS,
(Reg. No. 94697-479),

        Plaintiff,

vs.                                                                                       Civil No. 4:21-CV-0496-P

MICHAEL CARR, Warden,
FMC-Carswell, et al.,

        Defendants.

### MEMORANDUM OPINION and ORDER

    In this case, Bureau of Prisons ("BOP") inmate/plaintiff Dominga Balderas ("Balderas") asserts claims against individual government defendants located at FMC-Carswell, including Michael Carr, Warden, Assistant Warden Gonzales, and Officers Dinkins and Wynn. Am. Compl. 1-6, ECF No. 8, More Definite Statement ("MDS") 1-7, ECF No. 12. By an Opinion and Order of Partial Dismissal under 28 U.S.C. §§ 1915A and 1915(e)(2)(B) and Rule 54(b) Judgment, the Court dismissed some claims, but allowed service of process of Balderas's claims upon these four individual defendants. ECF Nos. 15, 16, 17. Now pending is the initial for summary judgment of the defendants (ECF No. 40), along with a brief in support (ECF No. 41), and an appendix (ECF No. 42). Plaintiff Balderas filed a response (ECF No. 43), along with a separate motion to appoint counsel. (ECF No. 44). The defendants also have filed a response to the motion for counsel, and a reply to Balderas's response to the summary judgment motion. (ECF Nos. 45, 46). After considering the relief sought by Balderas, the record, briefing and applicable law, the Court finds that the motion for appointment of counsel must be **DENIED**, and concludes that the motion for summary judgment must be **GRANTED**, such that all Balderas's remaining claims must be **DISMISSED** for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).

### BACKGROUND/PLAINTIFF'S PLEADINGS

    Balderas initiated this suit by filing a voluminous handwritten civil-rights complaint. Compl. 1-52, ECF No. 1. In response to a Court order informing her that

such claims brought by prisoners must be presented on the Court's civil-rights complaint form, Balderas completed a prisoner civil-rights complaint form as an amended complaint. Am. Compl. 1-6, ECF No. 8. In the amended complaint, Balderas named as defendants FMC-Carswell Warden Carr, Assistant Warden Gonzales, and Mailroom Officers Dinkins, Wynn, and Bishop. Am. Compl. 3, ECF No. 8.[1] In her statement of claim in the amended complaint, Balderas provided only that:

> \* Legals mail opened illegally - not in presence/copied and read [,]
>
> \* Mail being returned illegally without rejection forms,
>
> \* Program Statement not being followed on incoming and outgoing mail [,]
>
> \* Legal will NOT leave FMC-Carswell if you don't certify it.

Am. Compl. 4, ECF No. 5.

The Court then issued an order for more definite statement, directing Balderas to provide answers to the Court's particular questions in a more definite statement. ECF No. 11. The Court asked ten questions, most with sub-parts. Order 1-4, ECF No. 11. Balderas then filed a voluminous handwritten more definite statement. ECF No. 12. The Court's order directed Balderas to "respond to the inquiries and questions by writing the answers in paragraphs numbered to correspond to the number of each inquiry or request." Order for MDS 4, ECF No. 11. The Court determined that her more definite statement, for the most part, attempted to reply in the manner directed. ECF No. 15.

The Court's first three questions focused on seeking facts in support of Balderas's statement of claim in her amended complaint regarding inference with legal mail and regular mail. Order 2, ECF No. 11. Balderas's answers to Questions 1-3 were provided in pages 1-7, and there she alleged facts and claims against Warden Carr, and Officers Dinkins, and Wynn. MDS 1-7, ECF No. 12. Later in the more definite statement, at the middle of page 17 through page 20, Balderas wrote more particular and extensive allegations against Warden Carr and against Officers Dinkins and Wynn related to her claim that her First Amendment right was violated. *Id.* at 17-20. The Court determined that Balderas had set forth sufficient allegations to obtain

---

[1]. Balderas's claims against defendant Bishop were dismissed in the Court's order under 28 U.S.C. § 1915A and 1915(e)(2)(B). Op. and Order 4-5, ECF No. 15.

service of such claims against defendants Carr, Dinkins, and Wynn.

The Court's Question 4 asked Balderas to provide additional facts about Warden Carr, and her response provided further allegations against Carr. *Id.* at 7-8. Balderas also provided additional facts and allegations against Warden Carr related to claims under the Eighth Amendment. *Id.* at 13-17. The next question directed Balderas to state facts against Assistant Warden Gonzalez, and Balderas did so. *Id.* at 8-10. Likewise, Balderas provided more particular factual allegations against Dinkins in pages 10-12. *Id.* at 10-12. Thus, the Court found Balderas was entitled to service of her claim against Assistant Warden Gonzales, and her additional allegations against Dinkins.

Balderas's request for relief in this case includes persons being fired "not just transferred [sic] and protected for all their abuses [and] 5 million." Am. Compl. 4, ECF No. 8. In her amended complaint, Balderas marked "No" in response to the question of whether she had "exhausted all steps of the institutional grievance procedure." *Id.* at 3. Balderas also wrote in the same section that "can't get them and if you do, they are gotten rid of so that they are not read." *Id.*

The defendants now move for summary judgment in their favor on the basis that Balderas failed to exhaust available administrative remedies prior to filing this action.

## SUMMARY JUDGMENT EVIDENCE

As noted, Defendants have filed an appendix in support of the motion for summary judgment that includes a total of five pages of records. App. 1-5, ECF No. 42. In particular, the appendix includes the December 2, 2021 Declaration of Bureau of Prisons ("BOP") FMC-Carswell Executive Assistant Churee Costly. App. 1-5, ECF No. 42. Plaintiff has not provided any summary judgment evidence in response to the summary judgment motion.

## SUMMARY JUDGMENT STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law."*Anderson v. Liberty*

3

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted). "After the non-movant [here, the FMC-Carswell plaintiffs] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Nevertheless, a motion for summary judgment for failure to exhaust is treated slightly differently. *See, e.g. Dillon v. Rogers*, 596 F.3d 260, 272-73 (5th Cir. 2010). "Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert that plaintiffs have not invoked the proper forum for resolving a dispute." *Id.* at 272 (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)). Stated differently, exhaustion of administrative remedies is a "rule of judicial administration" that is akin to doctrines like 'abstention, finality, and ripeness . . . that govern the timing of federal court decision making.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (other citation omitted)). Since exhaustion of administrative remedies is a "threshold issue that courts must address

4

to determine whether litigation is being conducted in the right forum at the right time, we conclude that judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id.* (citation and footnote omitted).

## ANALYSIS

### A. Prison Litigation Reform Act ("PLRA") Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). The Supreme Court has described the PLRA exhaustion provision as a "mandatory exhaustion" statute and has "reject[ed] every attempt to deviate . . . from its textual mandate." *Ross v. Blake*, 578 U.S. 632, 639-40 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court") (citing *Porter*, 534 U.S. at 524). The only "textual exception to mandatory exhaustion" in the PLRA is the "availability" of administrative remedies. *Ross*, 578 U.S. at 642. To determine what remedies are "available" and thus must be exhausted, courts look to "the applicable procedural rules . . . defined . . . by the prison grievance process itself." *Jones*, 549 U.S. at 218. Administrative relief is "available" so long as the prison administrator has the authority to take some action in response to a complaint," even if that relief does not provide the precise "remedial action an inmate demands to the exclusion of all other forms of redress." *Booth*, 532 U.S. at 736. As a result, "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 578 U.S. at 639.

The Fifth Circuit has taken a strict approach to the exhaustion requirement. *Wilson v. Epps*, 776 F.3d 296, 299-300 (5th Cir. 2015) (quoting *Dillon*, 596 F.3d at 268) ("[P]risoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies properly.'"). The Fifth Circuit has also recognized that "[w]hen a defendant asserts the defense of lack of exhaustion, the district court should rule on [the exhaustion] issue before allowing

5

the case to proceed to the merits. *Nottingham v. Finsterwald*, 582 F. App'x 297, 297-98 (5th Cir. 2014) (citing *Dillon*, 596 F.3d at 265) (internal quotations omitted). And, exhaustion must have occurred *before* the lawsuit is filed. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2021); *see also Covarrubias v. Foxworth*, No. 6:13-CV-812, 2017 WL 1159767, at *3 (E.D. Tex. Mar. 29, 2017) (looking to whether administrative remedies had been exhausted "at the time of the filing of the original complaint" rather than any amended complaint). Also, when a prisoner can no longer comply with the exhaustion requirement, because the deadline for completing the administrative remedy has passed, the court may dismiss the suit with prejudice. *See Johnson v. La. Dep't of Pub. Safety & Corr.*, 468 F. 3d 278, 280-81 (5th Cir. 2006) (per curiam). Courts are not "to inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness"; rather, "prisoner[s] must exhaust such administrative remedies as are available, whatever they maybe."*Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (internal quotation marks omitted) (citing *Booth*, 532 U.S. at 740 n. 5; *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

### B. Application of Exhaustion to Balderas's BOP Records

As an inmate at FMC-Carswell, plaintiff Balderas was required to exhaust the BOP's multi-step grievance process prior to filing her lawsuit. *See Hicks v. Garcia*, 372 F. Appx. 557, 557 (5th Cir. 2010) (per curiam) (citing 28 U.S.C. § 1997e(a)) ("Under the Prison Litigation Reform Act, inmates must exhaust 'such administrative remedies as are available' prior to bringing a civil action"). As relevant to Balderas as a federal inmate, codified BOP regulations define the grievance procedures. *See* 28 C.F.R. §§ 542.10 *et seq*. First, a prisoner must attempt to informally present the issue to staff. 28 C.F.R. § 542.13(a). If that fails, the prisoner may then submit a "Request for Administrative Remedy" to the prison's warden. *Id*. at §§ 542.13(a), 542.14. If the prisoner is not satisfied with the warden's response, she may appeal to the BOP's regional director. *Id*. at § 542.15(a). If the prisoner is unsatisfied with the regional director's response, she may appeal to the BOP's general counsel. *Id*. The regulations also provide that if a "request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare", the Warden must respond within three days after filing. *Id.* at § 542.18. As this Court has explained, "[a]dministrative remedies have not been exhausted until the inmate's claim has been

6

filed at all levels and has been denied at all levels." *Wood v. Carr*, No.4:20-CV-1365-P, 2021 WL 2207202, at *3 (N.D. Tex. June 1, 2021).

Here, a review of the administrative-remedy records maintained by the BOP in the ordinary course of business show that Balderas did not timely exhaust administrative remedies with respect to the matter complained of in this lawsuit. Specifically, as shown in the declaration of BOP official Costly submitted in support of the defendants' summary-judgment motion, Balderas did not exhaust administrative remedies with respect to her allegations in this lawsuit prior to filing suit. *See* App. 4-5, 5 ¶ 6, ECF No. 42. Indeed, Balderas has never submitted a request for administrative remedy related to any matter while incarcerated within the BOP. *Id.* And, as noted, when she completed her pleading, she admitted she did not exhaust all the steps of the administrative remedy process. Am. Compl. 3, ECF No. 8.

Balderas, however, also recited a vague allegation that inmates' requests are not read and or do not receive responses. *Id.* Read liberally, Balderas claims that she should be excused from the exhaustion requirement because administrative remedies were somehow unavailable to her. But this conclusory allegation is insufficient, and any such argument must fail. The Fifth Circuit has held that exceptions to the exhaustion requirement apply only in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Schipke v. Van Buren*, 239 F. App'x 85, 86 (5th Cir. 2007) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion. Time and again, [the Supreme] Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." *Ross v. Blake*, 578 U.S. at 639 (citations omitted). Balderas pleads no facts and presents no evidence that administrative review is futile or unavailable, because she never actually tried to seek an administrative remedy. She fails to show that there was no possible form of relief or action that could have been provided through the administrative remedy process. *See Mixon v. Carr*, No. 4:20-CV-854-P (consolidated with multiple cases) 2021 WL 5052659, at *6 (N.D. Tex. Nov. 1, 2021) (stating administrative relief is "available" so long as the administrator has the "authority to take some action in response to the complaint") (citing *Booth*, 532 U.S. at 736).

Further, it appears Balderas was able to engage in other activities similar to

7

what is required to exhaust administrative remedies during this time—such as filing this lawsuit with supporting documents. ECF No. 1. By failing to properly attempt an informal resolution or submit a formal written administrative-remedy request to the institution, however, Balderas deprived the prison of the opportunity to investigate, respond, and possibly correct purported errors in the handling of her mail or in the mail policy and procedures. And she further deprived the Regional Director and General Counsel the opportunity to independently review her complaints and correct any issues that might have been identified. In short, the records show that Balderas failed to comply with the PLRA's mandatory requirement to exhaust administrative remedies prior to filing suit.

### C. Balderas's Arguments Challenging the Exhaustion Requirement

As noted, Balderas filed a handwritten response to the defendants' summary judgment motion. Resp. 2-3, 8-10, ECF No. 43. There, Balderas does not claim to have exhausted administrative remedies regarding her allegations in this suit. Instead, she appears to argue that she should be excused from the administrative exhaustion requirement of the PLRA because she has filed other non-administrative-remedy reports, because Defendants must have already been aware of her allegations from local newspaper stories, or, alternatively, because she thinks FMC-Carswell inmates are generally prevented from submitting an administrative remedy form by the institution's employees. *Id*.

First, Balderas asserts that she has filed other types of administrative remedies because she sent multiple emails "to the mental health department higher ups expressing needs," and she has an ongoing administrative matter under the Prison Rape Elimination Act ("PREA") that has been "verified to need to move up to [the Office of Inspector General] into a formal investigation." Resp. 2, ECF No. 43. Balderas appears to reference these other challenges as proof that Defendants are incorrect in stating that she has failed to exhaust her administrative remedies in this case. *Id.* But even if her complaints were treated as informal attempts to begin the administrative remedy process, Balderas was still required to complete each of the formal steps in the BOP's administrative remedy program to address inmate grievances, including submitting a formal written administrative-remedy request to the warden and appealing any subsequent decisions to the appropriate BOP regional director and then to the BOP's general counsel. *See* 28 C.F.R. §§ 542.13-15; *see also*

8

*Wood* , 2021 WL 2207202, at *3. Moreover, Balderas does not indicate that either her emails or her PREA complaint included any, much less all, of her allegations at issue in this case regarding the conditions at FMC-Carswell and the actions of Defendants. Thus, Balderas's emails to the mental health department and her PREA complaint do not demonstrate compliance with the PLRA exhaustion requirement as to the allegations at issue in this lawsuit.

Second, Balderas argues that she should be excused from the PLRA exhaustion requirement because Defendants must have already been aware of her allegations from local newspaper articles where she complained about FMC Carswell's conditions, meaning Defendants "had been put on notice of violations." Resp. 2-3, ECF No. 43. But contacting an outside journalist with complaints cannot be treated as the equivalent of filing a request for an administrative remedy through the BOP's standard three-step process. *See Ross*, 578 U.S. at 639 (explaining that the PLRA's mandatory exhaustion regime "foreclose[es] judicial discretion" to deviate from the statutory requirements). Additionally, even if her complaints to the newspaper were somehow deemed sufficient to start the administrative remedy process, Balderas again was still required to exhaust all the subsequent steps in the process by filing a claim at each level and having it denied at each level. *See Wood*, 2021 WL 2207202, at *3. Balderas therefore cannot claim that her quotations in local newspaper articles constitute proper exhaustion of administrative remedies.

Finally, Balderas argues that complying with the BOP's administrative remedy process was not possible in her case because if she had tried to work through the process, FMC-Carswell unit counselors would have refused her request for an administrative remedy form, would have screamed at her, threatened her with punishment, informed all other counselors not to give her a form, and notified the staff members named in her administrative complaint so they could also threaten her, while the officers in the institution's mail room would have shred any completed form instead of sending it to the BOP Regional Office. Resp. 8-10, ECF No. 43. In an additional declaration within the response, Balderas contends that a counselor named Ms. Kelley slams the door when an inmate asks for "any form," implies that the inmate will get punished if she takes a form, and claims that Kelley retaliated against another inmate (Faith Blake) when Blake "wrote her up." Resp, 14, ECF No. 43. Importantly, however, Balderas does not indicate that this actually happened to her,

9

only that it is what she "believe[s]" would have been the response if she had requested an administrative remedy form. *Id*. Otherwise, absent from Balderas's response is any further explanation or support for her conclusory assertions. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (explaining that when responding to a motion for summary judgment, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial," which is not satisfied by presenting "some metaphysical doubt as to the material facts . . . by conclusory allegations . . . by unsubstantiated assertions . . . or by only a scintilla of evidence") (internal citations omitted).

Balderas does not claim that she experienced this extreme response when she tried to complete the administrative remedy process regarding her allegations at issue in this suit, but rather she assumes that *if* she had tried to request an administrative remedy form, this is probably what would have happened. Resp. 9, ECF No. 43. In fact, other FMC-Carswell inmates were able to submit administrative remedy requests during the same time period when Balderas asserts she probably would not have been given a form. *See, e.g., Norman v. Carr*, No. 4:21-CV-630-O, 2022 WL 221227, at *4 (N.D. Tex. Jan. 25, 2022) (finding that an FMC-Carswell inmate had submitted multiple requests for administrative remedies between July 2019 and March 2021); *Mixon*, 2021 WL 5052659, at *4 (listing several administrative remedy requests filed by inmates at FMC-Carswell between April and August 2020). Balderas has failed to show that the administrative remedy process was completely unavailable to her, thereby excusing her from exhausting her administrative remedies. *See, e.g., Valentine*, 978 F.3d 154, 161-62 (5th Cir. 2020) (finding that even if the state prison system's administrative remedy process may have been "inadequate," "lengthy," and "suboptimal" due to the COVID-19 pandemic, "inadequate is not a synonym for unavailable" so as to excuse the plaintiffs from the PLRA exhaustion requirement); *Norman*, 2022 WL 221227, at *6 (declining to accept the plaintiff's claim that she should be excused from the PLRA exhaustion requirement because other inmates had allegedly tried to submit administrative remedy requests but were denied); *Montgomery v. Barr*, 507 F. Supp. 3d 711, 724-25 (N.D. Tex. 2020) (finding the plaintiff failed to exhaust her administrative remedies despite her claim that such remedies were unavailable in part as she lacked access to writing materials while on suicide watch).

In sum, Balderas has not demonstrated any grounds for holding that she exhausted her administrative remedies with her non-administrative remedy complaints, or that the BOP's administrative-remedy process was wholly unavailable to her or should otherwise be waived.

### D. Defendants have Discharged their Summary-Judgment Burden to Show that the Administrative-Remedy Process was Available.

Balderas contends there is some doubt as to whether Defendants have met their burden of proof on summary judgment, asserting that the evidence they provided only proves "that their practices are not honest and they are not following their own policy." Resp. 3, 5, ECF No. 43. Defendants met their summary-judgment burden by identifying the regulations which establish the BOP's administrative-remedy process and by providing a declaration discussing Balderas' administrative-remedy history. Summ. J. Brief 5, ECF No. 41; App. 4-5, ECF No. 42. Defendants thereby established for summary-judgment purposes that an administrative-remedy process was generally available to Balderas.

The burden at that point shifted to Balderas to show that this process was, in fact, unavailable for some specific reason. As noted above, "[e]xceptions to the exhaustion requirement apply only in 'extraordinary circumstances,' and [the plaintiffs] bears the burden of demonstrating the futility of administrative review." *Schipke*, 239 F. App'x at 86 (quoting *Fuller*, 11 F.3d at 62) ; *Amos v. Cain*, No. 4:20-CV-7-DMB-JMV, 2021 WL 1080518, at *7 (N.D. Miss. Mar. 19, 2021) (explaining that the "defendants have shown that [plaintiffs] failed to exhaust a generally available remedy" through a declaration stating that none of the plaintiffs "submitted a grievance related to any claim at issue here, much less pursued such a claim to conclusion," and that thereafter "the burden shifts to the plaintiffs to show that the generally available remedy was, in fact, unavailable").

Yet as explained in detail above, Balderas provides only conclusory allegations to rebut Defendants' evidence that she failed to exhaust her administrative remedies. Although she claims that Defendants' evidence is false, she never explains why. Balderas never states that she actually filed a request for an administrative remedy as to her allegations that Defendants have not mentioned, or that she tried to file such a request and was prevented by Defendants. Instead, she points to other types of complaints she has made, including those to entities outside the BOP, and asserts that she does not think she would have been able to complete the administrative remedy

process if she had tried. *See generally* Resp., ECF No. 43.

Balderas fails to identify any genuine issue of material fact concerning the availability of the administrative-remedy process. She could have exhausted administrative remedies prior to filing suit, but did not. Therefore, summary judgment in Defendants' favor is warranted.

## APPOINTMENT OF COUNSEL

The Court previously denied Balderas's motion for the appointment of counsel. ECF No. 14. In spite of that prior ruling, Balderas has again filed a request/motion for appointment of counsel within her response. Mot. Counsel, ECF No. 44. Although district courts "may request an attorney to represent any person unable to afford counsel" under the in forma pauperis statute, 28 U.S.C. § 1915(e)(1), "[i]n a civil case, an attorney should be appointed only under exceptional circumstances," *Williams v. Ballard*, 466 F.3d 330, 335 (5th Cir. 2006) (citation omitted). In deciding whether a civil case presents "exceptional circumstances," courts consider:

> 1. "the type and complexity of the case;"
>
> 2. the plaintiff's ability to "adequately . . . present and investigate his case;"
>
> 3. the presence of evidence of "conflicting testimony" that will require "skill in presentation of evidence and in cross examination;" and
>
> 4. the likelihood that the appointment "will benefit" the Court and the parties "by 'shortening the trial and assisting in a just determination.'"

*Cooper v. Sheriff, Lubbock Cnty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 212, 213 (5th Cir. 1982)).

After review and consideration of the motion for appointment of counsel under the exceptional circumstances standard and the enumerated factors, the Court concludes that Balderas has not met those factors and that the motion must be denied for the reasons stated in the Defendants' response to the request/motion for appointment of counsel. Resp. to Mot. Counsel 3-4, ECF No. 45.

## CONCLUSION & ORDER

It is therefore **ORDERED** that Dominga Balderas's request/motion for appointment of counsel (ECF No. 44) is **DENIED**.

It is further **ORDERED** that Defendants' motion for summary judgment on

the basis of exhaustion of administrative remedies (ECF No. 40) is **GRANTED,** such that all plaintiff Dominga Balderas's remaining claims are **DISMISSED WITH PREJUDICE.**

    **SO ORDERED** on this **29th day** of **March, 2022**.

*/s/ Mark T. Pittman*
Mark T. Pittman
UNITED STATES DISTRICT JUDGE